UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:15-cv-24380-ALTONAGA

YESMIN GALARZA,

    Plaintiff,

vs.

CARNIVAL CORPORATION, a Panama
corporation d/b/a "CARNIVAL CRUISE LINES",

    Defendant.
_____/

**DEFENDANT'S AMENDED *DAUBERT* CHALLENGES TO PLAINTIFF'S EXPERTS**

    The Defendant, CARNIVAL CORPORATION, by and through its undersigned counsel, pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 7.1 of the Local Rules governing practice in and for the Southern District of Florida, hereby respectfully submits this Amended Motion in *Limine*, in compliance with Local Rule 7.1, to challenge the admissibility of certain experts' opinions that Plaintiff intends to present at trial, and as grounds therefor, states as follows:

    Plaintiff alleges that she slipped and fell on a wet stair nosing on the portside terrace steps in between Deck 10 and Deck 9 on the *Carnival Liberty*. For context, Defendant submits photographs of the subject area. [Photos, attached hereto as Exhibit "1"]. In this slip and fall case, Plaintiff disclosed the intent to call expert witnesses at trial. Defendant raises its *Daubert* challenges as to the following:

- Plaintiff's Liability Expert – Frank Fore (Engineer);
- Plaintiff's Medical Experts – Dr. Lamoreaux (Orthopedic Surgeon), Dr. Homan

(Orthopedic Surgeon)

- Plaintiff's Life Care Planning Expert – Dr. Lichtblau

## **MEMORANDUM OF LAW**

**I.    THE OPERATIVE *DAUBERT* STANDARD FOR ADMISSIBILITY OF EXPERT OPINION TESTIMONY.**

Rule 702 of the Federal Rules of Evidence requires the district courts to serve as gatekeepers to the admission of scientific testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 2795, 125 L.Ed.2d 469 (1993). The district courts maintain this role "'to ensure that speculative, unreliable expert testimony does not reach the jury' under the mantle of reliability that accompanies the appellation 'expert testimony.'" *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). As gatekeepers, the courts properly exclude any expert or expert opinion that does not satisfy any one of the following criteria:

> (1) The expert must be qualified to testify competently regarding the matters he intends to address; (2) the methodology used to reach any conclusions must pass the *Daubert* test of reliability; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Fed.R.Evid. 702; *Quiet Tech. DC-8, Inc v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341-2 (11th Cir. 2003). The Eleventh Circuit refers to these requirements as the "qualification," "reliability," and "helpfulness" prongs, and although there is inevitably some overlap, they remain distinct concepts that must be individually analyzed. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The party offering the expert testimony bears the burden to lay the proper foundation for the expert opinion to be admissible, and admissibility must be shown by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

A.    **The experts must be qualified to render opinions on the specific subject at issue.**

To warrant admissibility, the expert's testimony must be derived from scientific, technical or otherwise specialized knowledge on the specific subject matter at issue, and "the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

### B. The opinions must be scientifically valid and reliable.

When a court considers the reliability of an expert witness, the court must undertake an independent analysis of each step in the logic leading to the expert's conclusions; if the analysis is deemed unreliable at any step, the expert's entire opinion must be excluded. *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009) *citing McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005). District Courts are charged with the duty to assess "whether the reasoning or methodology underlying the testimony is scientifically valid ..." *Daubert*, 509 U.S. at 592-93. At all times, the court's focus must be on the methodology and principles used by the expert to reach his conclusions, not the conclusions themselves. *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004). Expert testimony must be excluded if the reasoning or methodology underlying the opinion is scientifically invalid, or if the methodology cannot properly be applied to the facts. *Daubert*, 509 U.S. at 592.

The courts determine reliability based on these factors:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). Failure to satisfy these criteria demonstrates the theories are speculative and highly unreliable. *Kallas v. Carnival Corp.*, 2009 WL 901507, *6 (S.D. Fla. 2009). Furthermore, an expert opinion is not admissible when the only connection between the conclusion and the existing data is the

expert's own *ipse dixit* assertion. *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004) (citing *General Electric v. Joyner*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997).

  **C. The opinions must be helpful to the jury.**

  Federal Rule of Evidence 702 dictates that in order to be admissible, the expert's testimony must assist the fact finder. *Craggs Const. Co. v. Federal Ins. Co.*, 2007 WL 1452927, *1 (M.D. Fla. 2007). "By doing so, the court ensures that expert witnesses will not testify about lay matters which a jury is capable of understanding and deciding without the expert's help." *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 579 (N.D. Fla. 2009). Otherwise, there is a risk the jury will give the expert testimony undue weight because of its status. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1111 (11th Cir. 2005). It is not helpful for the expert to just tell the jury how to decide the case. *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).

**II. PLAINTIFF FAILS TO PROVE THE ADMISSIBILITY OF THE EXPERT OPINIONS OF HER LIABILITY EXPERT, FRANK FORE.**

  Mr. Fore states in his report that the stair treads and nosing in question were not slip resistant when wet. However, Mr. Fore provides no scientific basis for this opinion. Instead, Mr. Fore indicates that due to the addition of two abrasive strips on the subject step Plaintiff slipped on, he was not able to test the step for slip resistance. (Frank Fore's Report, Exhibit "2", p. 21, ¶ 1). Therefore, Mr. Fore should not be allowed to testify whether the subject step or nosing in question were or were not slip resistant.

  Similarly, Mr. Fore should be precluded from opining on coefficient of friction of leather on wood. His methodology for opining on this is relying on two websites, Carbide Depot and Engineer's Toolbox. He did not conduct any slip resistance testing himself.

  In addition, Mr. Fore should be precluded from testifying as to the slip resistance of

Plaintiff's sandals used at the time of her alleged slip.  Mr. Fore did not test the sandals for slip resistance and his basis for opining on them is his experience, which is clearly not scientific. . (Fore Deposition, p. 217, ll. 20-24, attached hereto as Exhibit "3").

Mr. Fore stated during his deposition he believes pressure cleaning teak can increase the slip resistance. (Fore Deposition, Ex. 3, p. 219, ll. 14-18).  He did not conduct any testing of teak to come to this conclusion.  He simply bases this on the fact he has a teak deck at his house. (Fore Deposition, Ex. 3, p. 219, ll. 19-22).

Mr. Fore also opines that the stairway was not sufficiently illuminated.  However, once more, he did not conduct any form of testing or utilize any other form of scientifically reliable methodology in coming to this conclusion.  All Mr. Fore did was look at a picture purportedly taken by the Plaintiff while on the subject cruise.  His ship inspection occurred during the day. He did not conduct any luminescence testing.  (Fore Deposition, Ex. 3,  p. 70, ll. 4-10).  Such off-the-cuff input from looking at photographs is not admissible expert opinion testimony. *Horton v. Maersk Line, Ltd.*, 2015 U.S. App. LEXIS 3033, *19-21 (11th Cir. 2015).  Therefore, Mr. Fore's opinions regarding whether the subject stairs were sufficiently illuminated should be disqualified.

Mr. Fore opines that Defendant did not post sufficient warnings in the area where Plaintiff fell. (Frank Fore's Report, Exhibit "2", p. 10, p. 19).

In this Circuit, the jury does not need an expert on warning cones:

> There is no specialized knowledge needed to look at cones and assess their ability to warn.  An average lay person can listen to lay testimony about placement, color, size, etc. of cones and decide whether a warning was appropriate or not. [The expert] is not assisting the jury understand matters which they would not otherwise comprehend.

*Torres v. Carnival*, 2014 U.S. Dist. LEXIS 100220 (S.D. Fla. 2014), *aff'd by* 2015 U.S. App.

LEXIS 20131, *14 (11th Cir. 2015). The Eleventh Circuit affirmed the exclusion of the expert's opinion regarding the adequacy of warning signs and added that the opinion was not helpful to the jury because "testimony regarding walking and the efficacy of different types of warnings can be understood easily and evaluated by jurors." *Torres*, at *14. Accordingly, Mr. Fore's opinion on the adequacy of warnings in the area is properly excluded.

Additionally, Mr. Fore discusses hydroplaning in his report. (Frank Fore's Report, Exhibit "2", p. 9). While he cites to a source he reviewed, Mr. Fore does not state anywhere or point to any discovery materials indicating how much water was on the deck at the time of Plaintiff's accident, nor how fast she was going, in order to adduce that she may have hydroplaned. He does not state that he conducted any experiments or used any other scientific methodology to determine whether hydroplaning played any part in Plaintiff's accident. Therefore, Mr. Fore should be precluded from testifying regarding hydroplaning.

Mr. Fore has a section of his report where he discusses slip resistance and various standards. (Frank Fore's Report, Exhibit "2", p. 12). Considering Mr. Fore did not conduct any slip resistance testing, or did not publish any results, Mr. Fore has not shown how he applied any of these standards to his analysis of slip resistance of the subject stairs.

Mr. Fore discusses the concavity of the subject step in his report. (Frank Fore's Report, Exhibit "2", p. 22). He concludes that the subject step holds water. However, Mr. Fore admits he was pouring pitchers of water on the step. There is nothing scientifically reliable about this experiment. There are no discovery materials provided that indicate there was a pitcher's worth of water on these steps at the time of Plaintiff's accident. There is no standard cited to indicating that pouring an entire pitcher's worth of water is the proper method to determine whether a step holds water.

Another section of Mr. Fore's report discusses water sources. (Frank Fore's Report, Exhibit "2", p. 23). This section of his report is full of nothing more than speculation. No one has testified nor has there been any other form of discovery that would indicate where any water came from in relation to this case. There is not a scintilla of scientific reliability in Mr. Fore's analysis of possible water sources. This would only mislead the jury by allowing Plaintiff to put the weight of an expert's testimony behind any theory as to where any water may have come from. The trier of fact does not need Mr. Fore to tell them his speculative thoughts on where the water may have come from.

## III. THE OPINIONS OF PLAINTIFF'S MEDICAL EXPERTS MUST BE LIMITED TO THEIR RESPECTIVE AREAS OF EXPERTISE.

### A. Dr. Lichtblau's opinions must be limited to the scope of his specialty.

Dr. Lichtblau practices medicine in the field of physiatry. He did not advise of any specialized education in psychology or psychiatry. Nevertheless, Dr. Lichtblau has sought to opine that Plaintiff is depressed according to his observations. (Lichtblau Report, p. 67, hereto attached as Exhibit "4").

Neither Plaintiff nor Dr. Lichtblau present any evidence that he is qualified, as a physiatrist, to conduct psychiatric or psychological testing or opine on the results. The mere fact that he underwent more medical training than a layperson does not license him to opine on all medical issues, even outside the area of his specialty. *Estate of Gilliam v. City of Prattville*, 667 F.Supp.2d 1276, 1297-98 (M.D. Alab. 2009). If he is going to rely on experience alone, Rule 702 requires him to explain how that experience applied to his opinions and reliably applied to the facts; the gatekeeping function of the courts requires more than simply "taking the expert's word for it." Fed.R.Evid. 702, Committee Notes 2000 Amendment. He made no such showing

to satisfy Rule 702.  Dr. Lichtblau's opinions regarding Plaintiff's psychiatric or psychological condition lie outside the scope of his expertise and are properly excluded.  Dr. Lichtblau overstepped the area of his expertise and the jury will only be confused with his incorrect, uninformed opinion in this regard.

Additionally, Dr. Lichtblau should be precluded from offering any opinions whether Plaintiff will require knee surgery or whether Plaintiff's current knee conditions are related to her shipboard accident.  Dr. Lichtblau is a physiatrist, not an orthopedic surgeon.  While he did testify that he has assisted in surgeries in the past, simply stated he is not an orthopedic expert and his opinions regarding that specialty and how it applies to this Plaintiff should be limited in that regard.

## IV.  THE EXPERT OPINIONS OF PLAINTIFF'S PHYSICIANS ON CAUSATION ARE NOT RELIABLE.

### A.  The legal requirements for admitting scientific evidence of causation.

Plaintiff's medical experts rely exclusively on the chronology of Plaintiff's onset of knee pain to conclude the shipboard fall is the underlying cause.  However, it is well established in the Eleventh Circuit that temporal proximity, alone, is not a scientific methodology that satisfies the reliability requirements under *Daubert. See, e.g., Estate of Gilliam v. City of Prattville*, 667 F. Supp.2d 1276, 1296 (M.D. Alab. 2009).  In *Gilliam*, the district court excluded the causation opinion of an expert that was "merely the product of the argument that what happens first must have caused what happened second." *Gilliam*, at 1296.  The Court's holding is apropos here:

> Simply put, correlation is not causation, and as the Eleventh Circuit has held, the *post hoc ergo propter hoc* fallacy is not reliable enough to be allowed as expert testimony.

*Gilliam*, at 1296, *citing McClain v. Metabolife Int'l Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005).

More recently, the Eleventh Circuit Court of Appeals affirmed the district courts' exclusion of an expert's causation opinion where no differential etiology methodology was conducted and the expert relied exclusively on a temporal relationship, and the Court explained:

> The methodology employed by [plaintiff's doctors] was unreliable, as it amounted to simple reliance on a temporal relationship. The doctors concluded that, because the [plaintiffs] did not manifest their specific injuries or need for [treatment] until after the event, the [incident] was the cause of those injuries. Such reasoning "is a classic 'post hoc ergo propter hoc' fallacy which 'assumes causation from temporal sequence.'"

*Cooper v. Marten Transport, Ltd.*, 2013 U.S. App. LEXIS 19778 (11th Cir. 2013). It is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship. *McClain v. Metabolife Int'l Inc.,* 401 F.3d 1233, 1243 (11th Cir. 2005). In this Circuit,

> a mere temporal relationship between an event and a patient's disease or symptoms does not allow an expert to place that event on a list of possible causes of the disease or symptoms. Case studies and clinical experience, used alone and not merely to bolster other evidence are also insufficient to show general causation.

*Hendrix*, at 1197, *citing Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002).

When a diagnosis is given and the experts seek to opine on the cause of the condition at issue, the experts must conduct the relevant and appropriate methodology – differential etiology. *Hendrix ex rel. G.P. v. Evenflor Co.*, Inc., 609 F.3d 1183, 1195, fn. 5 (11th Cir. 2010). Differential etiology is a medical process of elimination whereby the possible causes of a condition are considered and ruled out one-by-one, leaving only one cause remaining. *Hendrix ex rel. G.P. v. Evenflor Co., Inc.*, 609 F.3d 1183, 1195 (11th Cir. 2010). A reliable differential etiology analysis is accomplished in two steps: (1) compiling a comprehensive lists of hypotheses that might explain the set of salient clinical findings under consideration; and (2) the expert must eliminate all causes but one. *Hendrix*, at 1195 (citations omitted).

The second step is crucial.  An expert must provide reasons for rejecting alternative hypotheses using scientific methods and procedures and the elimination of those hypotheses must be founded on more than subjective beliefs or unsupported speculation.  *Hendrix*, 609 F.3d at 1197.  If the expert utterly fails to offer an explanation for why the alternative causes are ruled out, then the expert's testimony is justifiably excluded.  The reliability of the expert's method is judged by the application of the differential etiology approach to the facts of the case and the validity of the expert's particular method of analyzing the data and drawing conclusions therefrom.  *Hendrix*, at 1195.

This legal standard for admissibility is applied even where science has not definitively determined the cause of why an ailment develops:

> Given time, information, and resources, courts may only admit the state of science as it is.  Courts are cautioned not to admit speculation, conjecture, or inference that cannot be supported by sound scientific principles.  'The courtroom is not the place for scientific guesswork, even of the inspired sort.  Law lags science; it does not lead it.'

*Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002) (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996)).  As the gatekeepers, the district courts are bound to rigorously scrutinize the reliability of the proffered expert opinions.

**B.  Dr. Lamoreaux did not provide a reliable, admissible opinion on causation as to her knee injury.**

Dr. Lamoreaux did not conduct any differential etiology analysis before reaching his conclusion that Plaintiff's knee conditions are causally related to the shipboard fall.  Dr. Lamoreaux concluded that Plaintiff's knee arthroscopy became necessary due to her shipboard fall.  The evidence shows that alternative etiologies exist to explain Plaintiff's complaints of knee pain.  Dr. Lamoreaux's reports indicate degenerative issues in Plaintiff's right knee.  Dr. Lamoreaux failed to rule out the degenerative changes as a potential cause of her pain or the

basis for her arthroscopic surgery.  The evidence shows Plaintiff's complaints of knee pain are attributable to degenerative conditions in her knee and there is clear evidence of a strong degenerative process within Plaintiff's right knee.

Dr. Lamoreaux's causation opinions fail at step one.  He refused to identify potential alternative etiologies of Plaintiff's medical conditions.  Dr. Lamoreaux also failed step two as to the orthopaedic complaints, in that he completely failed to rule out the possibility that Plaintiff's degenerative knee conditions contributed to her orthopaedic conditions in her knee.

With regard to the cause of Plaintiff's meniscus tear, Dr. Lamoreaux opined that it causally relates to her shipboard fall largely based on a temporal relationship.  Dr. Lamoreaux concedes that there are other potential causes for Plaintiff's knee pain or the exacerbation of her knee condition, but he fails to rule them out with any scientific validity.  Dr. Lamoreaux states when asked about the degenerative nature of Plaintiff's right meniscus: "Basically, that although the primary plane of the tear was in that radial orientation, there was also a component, especially on the inferior aspect, that was more horizontal.  So that could be something that happens at the time that could be what happened to a tear that was walked on for two months. There's no way of knowing without having an MRI or an arthroscopic photo before and after, but it was not a perfect radial tear." (Dr. Lamoreaux's Deposition, p. 89, ll. 12-20, hereto attached as Exhibit "5").  He testified further:

> Q: Okay.  So—but there was no way of knowing what that ligament—or, sorry—what the meniscus would have looked like before October 18, 2014?
> A: No.
> Q: So we really can't say whether or not it was an accident on October 18, 2014 that caused the tearing of the meniscus?
> A: No.
> (Dr. Lamoreaux's Deposition, Ex. 5, p. 89, ll. 21-25, p. 90, ll. 1-3).

> Q: Okay.  So other than the temporal proximity, you know, in terms of—other than the fact that you know or she told you that she experienced this accident on October 18,

2014, you have no other reason to believe that this was an acute trauma?
A: I have no way of knowing—

(Dr. Lamoreaux's Deposition, Ex. 5, p. 92, ll. 8-13).

Dr. Lamoreaux did not rule out that this tear was simply degenerative in nature, "wear and tear", or that Plaintiff's knee was already in such a deteriorative condition that the further development of chondromalacia, osteoarthritis, or further knee pain was simply a matter of time, not a matter of acute trauma.

### C.  Dr. Homan did not provide a reliable, admissible opinion on causation.

Dr. Homan did not conduct a differential etiology analysis to reach his conclusion that Plaintiff's knee condition is causally related to her shipboard fall. Dr. Homan did not explain any basis on which he systematically ruled out all of Plaintiff's other degenerative knee conditions in determining that Plaintiff's current knee conditions are related to her ship accident.

The only event Dr. Homan considered in his causation analysis was the shipboard fall. He never saw Plaintiff before the cruise.  Dr. Homan opined on causation based on Plaintiff's verbal history and her continued complaints of knee pain since October 2014. Dr. Homan based his causation opinion strictly on the temporal relationship that the Eleventh Circuit holds is not reliable and not admissible.  (Dr. Homan's Report, hereto attached as Exhibit "6").

WHEREFORE, the Defendant Carnival Corporation respectfully requests this Court enter an Order precluding Plaintiff from presenting the expert opinions as set forth above.

### CERTIFICATE OF CONFERRING WITH COUNSEL

Pursuant to Local Rule 7.1(c) of the Rules governing practice in and for the Southern District of Florida, Defense counsel conferred with counsel for Plaintiff and confirmed that Plaintiff opposes the relief sought herein.  Plaintiff's counsel also interprets this Court's pre-trial

order regarding *Daubert* motions to mean each party is only entitled to file a motion with respect to a single expert.  [D.E. 17]

Dated:  July 1, 2016

                                        Respectfully submitted,

                                         /s/   *Juan C. Perez, Jr.*
                                        **Juan Carlos Perez, Jr.**
                                        Florida Bar No. 91581
                                        **jperez@admiral-law.com**
                                        HORR, NOVAK & SKIPP, P.A.
                                        Two Datran Center, Suite 1700
                                        9130 South Dadeland Boulevard
                                        Miami, FL  33156
                                        Telephone: (305) 670-2525
                                        Facsimile: (305) 670-2526
                                        ***Attorneys for Defendant, Carnival***
                                        ***Corporation d/b/a Carnival Cruise Lines***

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on July 1, 2016, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  We also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

   /s/   Juan C. Perez, Jr.
**Juan Carlos Perez, Jr.**
Florida Bar No. 91581
**jperez@admiral-law.com**
HORR, NOVAK & SKIPP, P.A.
Two Datran Center, Suite 1700
9130 South Dadeland Boulevard
Miami, FL  33156
Telephone: (305) 670-2525
Facsimile: (305) 670-2526
*Attorneys for Defendant, Carnival Corporation d/b/a Carnival Cruise Lines*

## SERVICE LIST

| | |
|---|---|
| **Michael D. Eriksen** | **David J. Horr** |
| Florida Bar No. 316016 | Florida Bar No. 310761 |
| **mde@travelaw.com** | **dhorr@admiral-law.com** |
| Eriksen Law Firm | **Raul G. Delgado, II** |
| 2161 Palm Beach Lakes Blvd., Suite 410 | Florida Bar No. 94004 |
| West Palm Beach, FL  33409 | **rdelgado@admiral-law.com** |
| Telephone: (866) 493-9902 | **Juan Carlos Perez, Jr.** |
| Facsimile:  (561) 533-8715 | Florida Bar No. 91581 |
| *Attorneys for Plaintiff, Yesmin Galarza* | **jperez@admiral-law.com** |
| | HORR, NOVAK & SKIPP, P.A. |
| | Two Datran Center, Suite 1700 |
| | 9130 South Dadeland Boulevard |
| | Miami, FL  33156 |
| | Telephone: (305) 670-2525 |
| | Facsimile: (305) 670-2526 |
| | *Attorneys for Defendant, Carnival Corporation d/b/a Carnival Cruise Lines* |