UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:  1:15-cv-24380-ALTONAGA

YESMIN GALARZA,

       Plaintiff,

vs.

CARNIVAL CORPORATION, a Panama
corporation d/b/a "CARNIVAL CRUISE LINES",

       Defendant.

_____/

## DEFENDANT'S OMNIBUS MOTION IN LIMINE

Defendant, CARNIVAL CORPORATION ("Carnival"), by and through its undersigned counsel, and pursuant to Local Rule 7.1 and Rules 401, 402 and 403 of the Federal Rules of Evidence, hereby seeks entry of an Order in *Limine* precluding Plaintiff from presenting or claiming as damages at trial any medical charges that were "written off" by her healthcare providers, from introducing evidence of prior dissimilar incidents, from introducing evidence that certain guidelines and regulations are binding, controlling, or applicable to Defendant or that any violation of those guidelines or regulations is evidence of negligence.  At trial, Plaintiff should be permitted only to submit medical bills in amounts that were actually paid to the providers by her or her collateral sources, and accepted as payment in full, and evidence of similar or substantially similar prior incidents.

       1.      The present matter involves a maritime personal injury action in which Plaintiff, YESMIN GALARZA, claims to have sustained personal injuries while a passenger aboard the

CASE NO.:  1:15-cv-24380-ALTONAGA
PAGE 2

*CARNIVAL LIBERTY*. Specifically, Plaintiff claims she slipped and fell while descending an exterior stair case from Deck 10 to Deck 9.

2.       At trial, it is expected Plaintiff will present evidence of damages she alleges were caused by her claimed accident.

3.       It is also expected Plaintiff will present evidence of prior incidents dating from 2011 through 2014 which occurred on the open teak decks or terrace steps on Deck 10 or Deck 9 on the *Carnival Liberty*, and also on other Conquest class vessels.

4.       Of the incidents produced to Plaintiff, sixteen (16) occurred on the *Liberty*.  Any incidents not occurring on the *Liberty* should be precluded because they involve other vessels.

5.       Defendant contends these prior incidents aboard the *Liberty* are not substantially similar to Plaintiff's incident, and Plaintiff should therefore be precluded from presenting any evidence of these prior incidents to establish Defendant had notice of a dangerous condition.

6.       It is expected Plaintiff will present evidence of the following standards or regulations:

   a)  American Society of Testing & Materials (ASTM) Standards F1166-07
   b)  NFPA-301
   c)  American National Standards Institute (ANSI)
   d)  Draft Passenger Vessel Accessibility Guidelines/ADA
   e)  International Maritime Organization (IMO) Circular 735

7.       Defendant anticipates Plaintiff will attempt to present evidence of these recommendations and guidelines as providing the applicable standard of care Defendant should have adhered to with regards to the subject step.

8.       The recommendations and guidelines relied upon by Plaintiff have no force of law and are otherwise inapplicable to Defendant's foreign-flagged vessel, *Carnival Liberty*.  As a

result these recommendations and guidelines are altogether irrelevant to determining whether Defendant satisfied its duty of care to Plaintiff.

9.      Furthermore, allowing the trier of fact to hear evidence of and consider these guidelines and recommendations will only prejudice Defendant and serve as a source of confusion.

10.     While other Courts have allowed evidence of these guidelines and recommendations in terms of being persuasive, no Court that Defendant is aware of has found them to be legally binding or controlling over a foreign flagged vessel and they therefore should not be admissible to prove negligence.

11.     It is expected Plaintiff will claim as damages medical charges for services rendered by:

        A.      A1 Imaging
        B.      Mid-Florida Orthopaedic Associates
        C.      Advance Technological
        D.      Care Centrix
        E.      Heart of Florida Regional
        F.      North Tampa Anesthesia Consultants
        G.      Cora Rehab Services
        H.      Celebration Orthopaedic
        I.      JLR Medical Group
        J.      Florida Hospital

12.     The invoices from these providers (attached hereto as **Composite Exhibit "1"**, **Ex. A-J**) contain several categories of damages:

        A.      The amount originally billed by the providers;
        B.      The amount paid by Plaintiff's insurance company;
        C.      The amount written off by the health care providers
        D.      The amount paid by Plaintiff herself;

13.     This Motion challenges only the admissibility and recoverability of the amounts written off by these providers (Category C above). Plaintiff is expected to demand entitlement to

compensation for $58,500.56 in medical expenses written off by the providers. To allow Plaintiff to seek these damages is improper. CARNIVAL does not contest Plaintiff's right to seek compensation for the amounts "accepted as payment in full" by the providers, for which Plaintiff or her private insurance company did pay.

**A. A1 IMAGING**

14.     A1 Imaging initially charged $1,595.00 for services rendered. *See* Billing Documents, attached hereto as Exhibit A.

15.     Plaintiff paid $472.66 of that amount.

16.     A1 Imaging wrote off $1,122.34 of the $1,595.00 initially charged, and neither Plaintiff nor her insurer is responsible to pay that amount (Exhibit A).

17.     No right of subrogation exists for the amount of the write off.

18.     In this action, Plaintiff will demand compensation for the $1,122.34 written off by A1 Imaging even though neither she nor a collateral source paid that amount and never became liable to pay it.

**B. MID-FLORIDA FLORIDA ORTHOPAEDIC ASSOCIATES**

19.     Mid-Florida Orthopaedic Associates initially charged $4,500.68 for services rendered. *See* Billing Documents, attached hereto as Exhibit B.

20.     Plaintiff's insurer paid $791.57 of that amount (Exhibit B).

21.     Plaintiff paid $115.28 of that amount (Exhibit B).

22.     Mid-Florida Orthopaedic Associates wrote off $3,593.83 of the $4,500.68 initially charged, and neither Plaintiff nor her insurer is responsible to pay that amount (Exhibit B).

23.     No right of subrogation exists for the amount of the write off.

24.     In this action, Plaintiff will demand compensation for the $4,500.68 written off by Mid-Florida Orthopaedic Associates, even though neither she nor collateral source paid that amount and never became liable to pay it (Exhibit B).

## C. ADVANCE TECHNOLOGICAL

25.     Advance Technological initially charged $100.00 for services rendered. *See* Billing Documents, attached hereto as Exhibit C.

26.     Plaintiff's insurer paid $25.44 of that amount (Exhibit C).

27.     Plaintiff paid $2.83 of that amount (Exhibit C).

28.     Advance Technological wrote off $71.73 of the $100.00 initially charged, and neither Plaintiff nor her insurer is responsible to pay that amount (Exhibit C).

29.     No right of subrogation exists for the amount of the write off.

30.     In this action, Plaintiff will demand compensation for the $71.73 written off by Advance Technological, even though neither she nor collateral source paid that amount and never became liable to pay it (Exhibit C).

## D. CARE CENTRIX

31.     Care Centrix initially charged $480.58 for services rendered. *See* Billing Documents, attached hereto as Exhibit D.

32.     Plaintiff's insurer paid $385.24 of that amount (Exhibit D).

33.     Plaintiff paid $42.81 of that amount (Exhibit D).

34.     Care Centrix wrote off $52.53 of the $480.58 initially charged, and neither Plaintiff nor her insurer is responsible to pay that amount (Exhibit D).

35.     No right of subrogation exists for the amount of the write off.

36.     In this action, Plaintiff will demand compensation for the $52.53 written off by Care Centrix even though neither she nor collateral source paid that amount and never became liable to pay it (Exhibit D).

## E. HEART OF FLORIDA REGIONAL

37.     Heart of Florida Regional initially charged $42,596.82 for services rendered. *See* Billing Documents, attached hereto as Exhibit E.

38.     Plaintiff's insurer paid $4,469.39 of that amount (Exhibit E).

39.     Plaintiff paid $300.00 of that amount (Exhibit E).

40.     Heart of Florida Regional wrote off $37,630.82 of the $42,596.82 initially charged, and neither Plaintiff nor her insurer is responsible to pay that amount (Exhibit E).

41.     No right of subrogation exists for the amount of the write off.

42.     In this action, Plaintiff will demand compensation for the $37,630.82 written off by Heart of Florida Regional even though neither she nor collateral source paid that amount and never became liable to pay it (Exhibit E).

## F. NORTH TAMPA ANESTHESIA CONSULTANTS

43.     North Tampa Anesthesia Consultants initially charged $1,606.00 for services rendered. *See* Billing Documents, attached hereto as Exhibit F.

44.     Plaintiff's insurer paid $558.54 of that amount (Exhibit F).

45.     Plaintiff paid $62.06 of that amount (Exhibit F).

46.     North Tampa Anesthesia Consultants wrote off $985.40 of the $1,606.00 initially charged, and neither Plaintiff nor her insurer is responsible to pay that amount (Exhibit F).

47.     No right of subrogation exists for the amount of the write off.

CASE NO.:  1:15-cv-24380-ALTONAGA
PAGE 7

48.     In this action, Plaintiff will demand compensation for the $985.40 written off by North Tampa Anesthesia Consultants even though neither she nor collateral source paid that amount and never became liable to pay it (Exhibit F).

## G. CORA REHAB SERVICES

49.     Cora Rehab Services initially charged $13,143.00 for services rendered. *See* Billing Documents, attached hereto as Exhibit G.

50.     Plaintiff's insurer paid $2,780.90 of that amount (Exhibit G).

51.     Cora Rehab Services wrote off $9,928.92 of the $13,143.00 initially charged, and neither Plaintiff nor her insurer is responsible to pay that amount (Exhibit G).

52.     No right of subrogation exists for the amount of the write off.

53.     In this action, Plaintiff will demand compensation for the $9,928.92 written off by Cora Rehab Services even though neither she nor collateral source paid that amount and never became liable to pay it (Exhibit G).

## H. CELEBRATION ORTHOPAEDIC

54.     Celebration Orthopaedic initially charged $5,222.00 for services rendered. *See* Billing Documents, attached hereto as Exhibit H.

55.     Plaintiff's insurer paid $1,479.33 of that amount (Exhibit H).

56.     Plaintiff paid $165.07 of that amount (Exhibit H).

57.     Celebration Orthopaedic wrote off $3,671.98 of the $5,222.00 initially charged, and neither Plaintiff nor her insurer is responsible to pay that amount (Exhibit H).

58.     No right of subrogation exists for the amount of the write off.

59.　　In this action, Plaintiff will demand compensation for the $1,014.60 written off by Celebration Orthopaedic even though neither she nor collateral source paid that amount and never became liable to pay it (Exhibit H).

## I. JLR MEDICAL GROUP

60.　　JLR Medical Group initially charged $1,672.00 for services rendered. *See* Billing Documents, attached hereto as Exhibit I.

61.　　Plaintiff's insurer paid $591.66 of that amount (Exhibit I).

62.　　Plaintiff paid $65.74 of that amount (Exhibit I).

63.　　JLR Medical Group wrote off $1,014.60 of the $1,672.00 initially charged, and neither Plaintiff nor her insurer is responsible to pay that amount (Exhibit I).

64.　　No right of subrogation exists for the amount of the write off.

65.　　In this action, Plaintiff will demand compensation for the $1,014.60 written off by JLR Medical Group even though neither she nor collateral source paid that amount and never became liable to pay it (Exhibit I).

## J. FLORIDA HOSPITAL

66.　　Florida Hospital initially charged $28,542.08 for services rendered. *See* Billing Documents, attached hereto as Exhibit J.

67.　　Plaintiff's insurer paid $7,279.94 of that amount (Exhibit J).

68.　　Plaintiff paid $985.51 of that amount (Exhibit J).

69.　　Florida Hospital wrote off $428.41 of the $28,542.08 initially charged, and neither Plaintiff nor her insurer is responsible to pay that amount (Exhibit J).

70.　　No right of subrogation exists for the amount of the write off.

71.     In this action, Plaintiff will demand compensation for the $428.41 written off by Florida Hospital even though neither she nor collateral source paid that amount and never became liable to pay it (Exhibit J).

## MEMORANDUM OF LAW

### I.     GENERAL MARITIME LAW GOVERNS

The present matter is controlled by general maritime law. *See Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S. Ct. 493, 34 L. Ed. 2d 454 (1972); *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S. Ct. 2654, 73 L. Ed. 2d. 300 (1982), *reh'g denied*, 459 U.S. 899, 103 S. Ct. 198 (1982); *Sisson v. Ruby*, 497 U.S. 358, 110 S. Ct. 2892, 111 L. Ed. 2d 292(1990).   While the law governing suits involving passengers against cruise lines is the general maritime law of the United States. *See generally* THOMAS J. SCHOENBAUM, 1 ADMIRALTY AND MARITIME LAW §3-5 (2d ed. 1994); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318 (11th Cir. 1989), on remand, 715 F. Supp. 1069 (M.D. Fla. 1989); *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71 (6th Cir. 1990); *see also Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S. Ct. 406 (1959); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 74 S. Ct. 202 (1953).

### II.     PLAINTIFF CANNOT RECOVER FOR DAMAGES SHE DID NOT SUSTAIN

This Motion is not intended to address the compensatory damages Plaintiff will claim that were actually paid by her insurance company. Thus, precedent applying the collateral source rule is not relevant here. Rather, this Motion addresses the amounts that have been voluntarily written off by Plaintiff's healthcare providers, which no party (neither Plaintiff, nor her insurance company) is obligated to pay. While Carnival disputes Plaintiff's negligence claim, it does not

dispute that as the alleged tortfeasor, it may be obligated to compensate Plaintiff for sums paid by her or paid by collateral sources, should it be found liable.

Instead, only the damages <u>actually incurred</u> should be presented as evidence of damages, whether paid by Plaintiff or paid by a collateral source. Carnival respectfully requests the Court adopt the well-reasoned and fair approach it has previously adopted in several recent decisions involving cases governed by the general maritime law including: *Pownall v. Cunard Line Ltd. Co.,* Case No. 06-22836 (Trial Transcript, Case No. 06-22836, attached hereto as **Exhibit "2"**); *Giron v. Carnival Corporation.*, Case No. 10-20387 (Pre- Trial Conference Transcript, Case No. 10-20387, p. 10-18, attached hereto as **Exhibit "3"**); and *Fitzimmons v. Royal Caribbean Cruises, Ltd.*, Case No. 11-21079 (Calendar Call Transcript, Case No. 11-21079, p. 4-7 attached hereto as **Exhibit "4"**).

In *Pownall*, the Court held that a plaintiff <u>may not</u> present as evidence of damages at trial amounts that were written off by a plaintiff's healthcare providers, for which there is no obligation to pay. Instead, a plaintiff may present as evidence of damages only those amounts that the healthcare providers were actually paid and then accepted as payment in full. The Court noted in its decision that although the collateral source rule may apply to the actual payments made by collateral sources, the amount written off by the provider is not an incurred debt for which the plaintiff should be compensated for.  *Id.*

This reasoning was followed by the district court in *Mesirow v. Leiserv, Inc.*, 2005 U.S.Dist. LEXIS 31482 *10-16 (D. Az. Dec. 1, 2005) where it concluded "[T]he court finds that the collateral source rule is best honored by permitting plaintiff to recover amounts paid by him or his insurer, but barring recovery for any amounts of discounts or write-offs which neither plaintiff nor his insurer incurred." These opinions convey the fair and reasonable objective,

mindful of the collateral source rule, of compensating a Plaintiff for damages actually incurred. Compensatory damages should not act to confer a windfall to the Plaintiff.

> **A.      Precluding Plaintiff from recovering damages she did not sustain is consistent with the general maritime law and common law.**

There is no dispute the general maritime law governs the substantive issues that arise in this matter. The United States Supreme Court described the general maritime law as "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *East River Steam Ship Corp. v. TransAmerica Delaval, Inc.*, 476 U.S. 858, 106 S. Ct. 2295, 2299 (1986). In developing the maritime law, courts have consulted state law and the Restatement of Torts. *Vickers v. Chiles Drilling Co.*, 822 F.2d 535, 538 (5th Cir. 1987); *Doyle v. Graske*, 565 F. Supp. 2d 1069, 1081-82 (D. Neb. 2008) (citing *Wells v. Liddy*, 186 F.3d 505, 525 (4th Cir. 1999); *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 841 (9th Cir. 2002). By applying the provisions of the Restatement, the court sitting in admiralty furthers the federal interest in establishing uniform rules of maritime law. *Transco Syndicate #1, Ltd. v. Bollinger Shipyards, Inc.*, 1 F. Supp. 2d 608, 614 (E.D. La. 1998) (in maritime action, applying Restatement of Torts over state law where they conflict).

The Restatement (Second) of Torts explains that a tortfeasor is liable only for the amount of the net harm that he has caused. Restatement (Second) of Torts, §906, comment (a) (1979). The Restatement further explains that a plaintiff is not entitled to collect in compensatory damages more than was actually paid for the services (such as healthcare):

> **§911  (value of damages)**
>
> (2)  The exchange of value of property or services is the amount of money for which the subject matter could be exchanged or procured if there is a market continually resorted to by traders…

> Comment (h): ... When the plaintiff seeks to recover for expenditures made or liability incurred to third persons for services rendered, normally the amount recovered is the reasonable value of the services rather than the amount paid or charged.  If, however, the injured person paid less than the exchange rate, <u>he can recover no more than the amount paid</u> . . .

Restatement (Second) of Torts, §911 (1979).

The purpose of the compensatory damages category in maritime tort cases is to place the injured person as nearly as possible in the condition he would have occupied if the wrong had not occurred. *See, e.g., Freeport Sulphur Co. v. S/S Hermosa*, 526 F.2d 300, 304 (5th Cir. 1976). Under the Restatement, and ultimately the general maritime law, this is accomplished by limiting Plaintiff's recovery of damages for healthcare services she received to the amount actually paid by her and her healthcare insurer. Allowing damages for amounts paid by neither would confer an improper windfall to the Plaintiff.

This is consistent with the outcome of the above-cited maritime cases involving the question of whether a maritime passenger should be permitted to present evidence of damages of medical charges written off by his healthcare providers. These cases arose in this Court in directly analogous maritime personal injury actions.

Accordingly, under *Mesirow, Pownall, Giron*, *Fitzimmons*, the general maritime law, and common law tort principals, Plaintiff should be precluded, not only from claiming, but also from presenting as evidence at trial the initial "billed charges" of the medical providers, as these amounts do not accurately reflect the actual cost of the medical care she received, nor the damages Plaintiff actually sustained.

The damages amounts for medical care Plaintiff proposes to present at trial will include demand for a $19,687.60 windfall.  The initial "billed charges" are nothing more than "phantom

damages." That is, the original, pre-write-off amounts *do not* accurately reflect the true "reasonable and customary" cost of care for the medical services received by Plaintiff. Accordingly, the $19,687.60 written off by her providers is not relevant to any damages calculation in this matter under Rules 401 and 402. Plaintiff should be permitted to submit medical bills only for the amounts actually paid by her and her collateral sources, which were accepted as payment in full by the respective healthcare providers.

## III.    PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF DISSIMILAR PRIOR INCIDENTS

Evidence of prior incidents may be relevant to show notice of a particular defect or danger, the magnitude of the defect or danger, the defendant's ability to correct a known defect or danger, the lack of safety for intended uses, the strength of a product, the standard of care, and causation. *Hessen v. Jaguar Cars, Inc*., 915 F.2d 641, 650 (11th Cir. 1990); *see also Cook v. CSX Transp., Inc.*, 2008 WL 2275544, *3 (M.D. Fla. 2008); *Jones v. Otis Elevator Co*., 861 F.2d 655, 661-62 (11th Cir. 1988); *Heath, Jr. v. Suzuki Motor Corp*., 126 F.3d 1391, 1396 (11th Cir. 1997). However, because there is likelihood for prejudice resulting from the admission of such evidence, limitations have been imposed. *See, e.g., Cook*, 2008 WL 2275544 at *3.

The trial court must consider three factors in evaluating the admissibility of evidence of prior incidents: First, the party wishing to admit the evidence must show that the incident occurred under substantially similar circumstances. *Hessen*, 915 F.2d at 649-50 (citing *Jones*, 861 F.2d at 661-62; *Skye v. Maersk Line, Ltd.*, 2012 U.S.Dist.Lexis 52087, *22-23 (S.D. Fla. 2012)); *see IBL Corp. v. Fla. Power & Light Co*., 400 So. 2d 1288, 1288-89 (Fla. 3rd DCA 1981) (upholding the trial court's decision to exclude evidence of a prior incident because the plaintiff "failed to show sufficient similarity of the conditions, causes and circumstances surrounding

both incidents so as to regard the disputed evidence as relevant and material"). Second, the prior incidents must not be too remote in time. *Id*. Finally, the probative value of the evidence must outweigh the prejudice or confusion of the issues which may result from the admission of such evidence. *Heath Jr.*, 126 F. 3d at 1396, n. 13.

Failure to lay a sufficient predicate establishing substantial similarity renders the evidence irrelevant as a matter of law. *See, e.g., Agrofollajes, S.A. v. E.I. Du Pont De Nemours & Company, Inc*., 48 So.3d 976, 992 (Fla. 3rd DCA 2010) (reversing trial court's admission of prior claims that were not shown to be substantially similar). Where the party seeking to admit evidence of other accidents does not satisfy these criteria, a motion in limine precluding that evidence is properly granted. *Thomas v. Bombardier Recreational Products, Inc*., 2010 U.S. Dist.Lexis 115412, *5 (M.D. Fla 2010).

Plaintiff bears the burden of proof to establish these three incidents occurred under substantially conditions to that of Plaintiff's claimed incident. *Hessen*, 915 F.2d at 649-50 (citing *Jones*, 861 F.2d at 661-62).  Here, as indicated above, sixteen (16) prior incidents disclosed by Defendant occurred aboard the *Carnival Liberty*. (Exhibit 5).  Of those, all incidents involved different exterior stairways (e.g. portside or aft starboard side) from the subject stairway (portside) upon which Plaintiff claimed she slipped and fell on the date of her accident.

1.      Evidence or argument concerning these prior falls aboard the *Carnival Liberty* should be precluded because Plaintiff cannot prove they occurred under substantially similar conditions, causes, or circumstances.  Importantly, Plaintiff's allegations are very specific in nature regarding the cause of her claimed incident.  Here, Plaintiff claims that she slipped and fell on the portside exterior stairways from Deck 10 to Deck 9 aboard the *Liberty* as a result of insufficient slip resistance on the subject tread and nosing at the edge of the steps when wet.

Plaintiff also was descending the subject steps at night while a movie was playing and alleged there was insufficient lighting.  Specifically, Plaintiff slipped on the metal nosing of the step. Prior incidents involving falls aboard different vessels, different stairways and involving different causes are not sufficiently relevant to the operative allegations of Plaintiff's complaint and are thereby irrelevant as a matter of law.  Defendant performed a search of its database for recorded incidents on the outdoor terrace teak steps three years prior to Plaintiff's claimed incident.  The search revealed no substantially similar incidents on the *Carnival Liberty* where a passenger was descending this specific set of portside steps while they were wet at night time while a movie was playing and slipped on the edge of the nosing.

## IV.    PLAINIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF VOLUNTARY GUIDELINES OR REGULATIONS AS EVIDENCE OF NEGLIGENCE

The recommendations and guidelines at issue here are not applicable or relevant to the design and construction of foreign-flagged cruise ships, such as the *CARNIVAL LIBERTY*.  In turn, they have no bearing on the reasonableness of the subject exterior staircase.  "It is always within the trial court's discretion to exclude published recommendations or standards if they fail to meet the threshold test for trustworthiness and relevancy." *Muncie Aviation Corp. v. Party Doll Fleet, Inc*., 519 F. 2d 1178, 1183 (5th Cir. 1975).   Defendant owes Plaintiff only a duty of reasonable care under the circumstances.  *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406 (1959).[1]  The recommendations and guidelines relied upon by

---

[1] *Everett v. Carnival Cruise Lines, Inc.,* 912 F.2d 1355, 1358 (11th Cir. 1990); *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1322 (11th Cir. 1989), *on remand,* 715 F.Supp. 1069 (M.D.Fla. 1989); *see also Mercer v. Carnival Corp.,* 2009 WL 302274, *3 (S.D.Fla. 2009); *Wish v. MSC Crociere, S.A., et al.,* 2008 U.S.Dist. Lexis 109072, *3 (S.D.Fla. 2008); *Isbell v. Carnival Corp.,* 462 F.Supp. 2d 1232, 1237 (S.D.Fla. 2006).  Specifically, the Supreme Court has defined the

Plaintiff seek to elevate the standard of care and have no bearing or relevance on this standard. Therefore, evidence or testimony referencing these materials should be precluded under Rule 402.

## A.   American Society of Testing and Materials (ASTM) Standards have no force of law and are otherwise inapplicable to MAJESTY OF THE SEAS

The ASTM standards are U.S. land based standards/guidelines and have no applicability to cruise ships.

Guidelines issued by the ASTM do not apply to cruise ships. [Deposition of Frank Fore, at p. 106-107; attached hereto as **Exhibit 6**].  The ASTM is an engineering organization which promulgates voluntary guidelines that have no applicability to passenger vessels, including foreign flag cruise ships such as the *Liberty*.   The voluntary recommendations set forth by such engineering organizations have no force of law unless adopted through statute, ordinance, or regulation. *See Knarr v. Chapman School of Seamanship*, 2000 WL 433981 *2 (E.D.Pa. 2000).

Plaintiff's Liability Expert, Frank Fore, has admitted that ASTM Standards do not apply to cruise ships.  Therefore, ASTM standards are of no consequence in determining the standard of care applicable here and Plaintiff should be precluded from referencing it as a basis for the

---

duty of care owed passengers by a cruise ship operator as follows: "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." *Kermarec,* 79 S.Ct. at 410.  Reasonable care, as a standard for the imposition of liability, requires as a prerequisite to the imposition of liability, that the cruise ship operator have actual or constructive notice of a dangerous or risk-creating condition.  *Everett,* 912 F.2d at 1358; *Keefe,* 867 F.2d at 1322; *Wish,* U.S.Dist. Lexis at *3; *Isbell,* 462 F.Supp.2d at 1237; *Weiner v. Carnival Cruise Lines,* Case No. 11-Civ-22516-Scola (S.D.Fla. Oct. 22, 2012); *Patterson v. Celebrity Cruises, Inc.,* Case No. 12-Civ-20902-Cohn (S.D.Fla. Nov. 19, 2012); *see also Beard v. Norwegian Caribbean Lines,* 900 F.2d 71, 73-74 (6th Cir. 1990); *Muratore v. M/S Scotia Prince,* 845 F.2d 347, 353 (1st Cir. 1988); *Monteleone v. Bahama Cruise Line, Inc.,* 838 F.2d 63, 65-66 (2nd Cir. 1988); *Rainey v. Paquet Cruises, Inc.,* 709 F.2d 169, 172 (2nd Cir. 1983); *Gibboney v. Wright,* 517 F.2d 1054, 1059 (5th Cir. 1975); *Urian v. Milstead,* 473 F.2d 948, 951 (8th Cir. 1973).

standard of care Defendant owed Plaintiff.  *See Pic N' Save West Fla. Corp., Inc. v. Sprague*, 589 So. 2d 313, 314 (Fla. 5th DCA 1991) (holding the trial court to have erred in allowing expert testimony regarding a guideline issued by the American National Standards Institute (ANSI) because it constituted an inapplicable standard of care).

**B.      The NFPA-301: "Code for Safety to Life from Fire Merchant Vessels" has no force of law and is otherwise inapplicable to the *Carnival Liberty***

The "Code for Safety to Life from Fire Merchant Vessels", similar to the ASTM standards, is not applicable to the *Carnival Liberty*, a foreign-flagged cruise ship, and is not applicable to the stair case in question.

The "Code for Safety to Life from Fire Merchant Vessels" does not have force of law with respect to the construction and design of the *Carnival Liberty*.  It has no application or relevance to Plaintiff's claims and all reference or argument as to its recommendations should be precluded.

**C.      The DRAFT Passenger Vessel Accessibility Guidelines (PVAG) (June 2008) have no force of law and is otherwise inapplicable to the *Carnival Liberty***

The Draft Passenger Vessel Accessibility Guidelines (PVAG) remain in draft form and are only proposed guidelines. [Deposition of Bryan Emond,  attached hereto as Exhibit 7, Vol. II, at p. 170-172].  In fact, the 2008 guidelines have been superseded.  The PVAG provisions at issue deal only with providing ***accessible walkways*** to ***disabled persons***.  Plaintiff does not allege she was disabled at the time of her claimed incident and she has provided no evidence to establish she had a disability contemplated by the PVAG guidelines addressing the accessibility of public areas.

**D.      IMO Circular 735, "Recommendation on the Design and Operation of Passenger Ships to Respond to Elderly and Disabled Persons' Needs" has no force of law and is otherwise inapplicable to the *Carnival Liberty***

Generally, IMO regulations are binding requirements against the class of vessel to which they are written.   However, IMO Circular 735 is, as identified in its title, purely a recommendation and has no force of law.   Furthermore, this publication expressly states its recommendations are applicable to passenger ships such as ferries as opposed to cruise ships. IMO Circular 735 states that "[p]assenger ships such as ro-ro ferries and cruise ships are very different in their design construction, ports of call, passenger profile, and operation mode and should be considered separately."   As such, the IMO recommendations at issue were not intended to apply to cruise ships, such as the *Carnival Liberty*.

Finally, the IMO recommendation at issue were made in response to elderly and disabled persons and designed to give them easy access to areas.   IMO Circular 735 states "…to the extent possible be designed in such a way that there is a barrier free passage for elderly and disabled persons in public spaces on board…"   Here, the issue of accessibility for an elderly or disabled individual is simply not in play.   Therefore, any evidence of or reference to IMO Circular 735 should be precluded because it does not apply to cruise ships and its purpose is not relevant to condition of the step at issue.

II.      **Evidence, Testimony, or Argument regarding the Inapplicable Recommendations and Guidelines is Properly Excluded as Prejudicial and Likely to Lead to Confusion of the Issues**

Under Rule 403 of the Federal Rules of Evidence, a district court may exclude evidence, even if relevant, "if its probative value is substantially outweighed by a danger or one or more of the following: *unfair prejudice*, *confusing the issues*, *misleading the jury*, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403 (emphasis added).  Within this

context, unfair prejudice means "an undue tendency to suggest a decision on an improper basis."

*Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1155 (5th Cir. 1981).

**WHEREFORE**, Carnival respectfully requests the Court enter an order precluding Plaintiff from presenting or claiming as damages at trial any medical charges that were "written off" by her healthcare providers, from introducing evidence of prior dissimilar incidents, from introducing evidence that certain guidelines and regulations are binding, controlling, or applicable to Defendant or that any violation of those guidelines or regulations constitutes evidence of negligence.

## <u>CERTIFICATE OF CONFERRING WITH COUNSEL</u>

Pursuant to Local Rule 7.1(c) of the Rules governing practice in and for the Southern District of Florida, CARNIVAL's counsel conferred with Plaintiff's counsel regarding the issues raised in this Motion, but an agreement could not be reached.

Dated:   July 8, 2016

Respectfully submitted,

 /s/  *Juan C. Perez, Jr.*
**David J. Horr**
Florida Bar No. 310761
dhorr@admiral-law.com
**Raul G. Delgado, II**
Florida Bar No. 94004
rdelgado@admiral-law.com
**Juan Carlos Perez, Jr.**
Florida Bar No. 91581
jperez@admiral-law.com
HORR, NOVAK & SKIPP, P.A.
Two Datran Center, Suite 1700
9130 South Dadeland Boulevard
Miami, FL  33156
Telephone: (305) 670-2525
Facsimile: (305) 670-2526
*Attorneys for Defendant, Carnival*
*Corporation d/b/a Carnival Cruise Lines*

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that on July 8, 2016, we electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  We also certify that the foregoing

document is being served this day on all counsel of record or pro se parties identified on the

attached Service List in the manner specified, either via transmission of Notices of Electronic

Filing generated by CM/ECF or in some other authorized manner for those counsel or parties

who are not authorized to receive electronic Notices of Electronic Filing.


   /s/  *Juan C. Perez, Jr.*
**David J. Horr**
Florida Bar No. 310761
dhorr@admiral-law.com
**Raul G. Delgado, II**
Florida Bar No. 94004
rdelgado@admiral-law.com
**Juan Carlos Perez, Jr.**
Florida Bar No. 91581
jperez@admiral-law.com
*Attorneys for Defendant, Carnival*
*Corporation d/b/a Carnival Cruise Lines*

/1098436/3156

## <u>SERVICE LIST</u>

**Michael D. Eriksen**
Florida Bar No. 316016
mde@travelaw.com
Eriksen Law Firm
2161 Palm Beach Lakes Blvd., Suite 410
West Palm Beach, FL  33409
Telephone: (866) 493-9902
Facsimile:  (561) 533-8715
*Attorneys for Plaintiff, Yesmin Galarza*

**David J. Horr**
Florida Bar No. 310761
dhorr@admiral-law.com
**Raul G. Delgado, II**
Florida Bar No. 94004
rdelgado@admiral-law.com
**Juan Carlos Perez, Jr.**
Florida Bar No. 91581
jperez@admiral-law.com
HORR, NOVAK & SKIPP, P.A.
Two Datran Center, Suite 1700
9130 South Dadeland Boulevard
Miami, FL  33156
Telephone: (305) 670-2525
Facsimile: (305) 670-2526
*Attorneys for Defendant, Carnival*
*Corporation d/b/a Carnival*
*Cruise Lines*